**AMERICAN PROTECTION INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**HELM CONCENTRATES, INC., a California corporation, and Helm Tomatoes, Inc., a California corporation, Defendants.**

**And Related Counter Claims and Third Party Claims.**

**No. CV–F–91–445 REC.**

United States District Court, E.D. California.

Dec. 9, 1991.

Alan G. Buckner, Marina Del Rey, Cal., for plaintiff.

Joan M. Dolinsky, Cotkin, Collins & Franscell, Los Angeles, Cal., for defendants.

Ted R. Frame, Frame & Matsumoto, Coalinga, Cal., for defendants and counter claimants, Helm Concentrates, Inc., and Helm Tomatoes, Inc.

Mary G. Whitaker, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for third-party defendants, American Motorist Ins. Co. and Lumberman's Mut. Cas. Co.

## MEMORANDUM AND ORDER ON DEFENDANT AND COUNTER–CLAIMANT'S MOTION TO COMPEL

DENNIS L. BECK, United States Magistrate Judge.

This is a diversity action wherein Plaintiff, American Protection Insurance Company (APICO) filed suit against Helm Concentrates, Inc. and Helm Tomatoes, Inc. (Helm) seeking a declaration that its commercial "all-risk" policy does not provide coverage for losses claimed by Helm owing to the failure of machinery in its tomato processing plant. APICO claims that

Helm's losses were due to the negligent design, manufacture and/or installation of the equipment. Helm has filed a counterclaim against APICO and third party claims against American Motorist Insurance Company (AMICO) and Lumberman's Mutual Casualty Company (LMCC), all of which provided coverage under separate policies issued as part of the Kemper Insurance Company "all-risk" package policy. The counter and third party claims, allege that each of the insurers breached its contract of insurance, as well as the covenant of good faith and fair dealing, and each acted in bad faith in denying Helm's claims under the policies.

The narrow issue remaining on this motion to compel is whether information in APICO's files relating to the reserves established on the claims at issue in this action are discoverable.

Helm seeks to discover information related to the reserves established by APICO on each of its claims. APICO objects on the grounds that such information is not relevant to any of the claims asserted in this lawsuit and that it is not likely to lead to the discovery of admissible evidence.

In the apparent belief that this issue is a matter of substantive law controlled by California precedent Helm relies upon *Sampson v. Transamerica Insurance Co.*, 30 Cal.3d 220, 178 Cal.Rptr. 343, 636 P.2d 32 (1981) and *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 161 Cal.Rptr. 322 (1980).

APICO urges that the rationale for discovery and/or admissibility of reserve information discussed in *Sampson* and *Miller* is not applicable in this case. APICO notes that the policies involved in *Sampson* and *Miller* were "third party" liability insurance policies and that the bad faith alleged was the failure to defend, whereas in the instant case involves a first party claim under a property insurance policy. APICO notes that in *Garvey v. State Farm Fire and Casualty Company*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989) and *Warner v. Fire Ins. Exchange*, 230 Cal. App.3d 1029, 281 Cal.Rptr. 635 (1991) California courts recognized the distinction between "all-risk" property (first party) coverage and liability coverage with respect to the issue of bad faith. APICO claims that since the issue here is not bad faith in refusing to defend but in denying the claim that the relevant issues are the investigation of the claim and the policy language and that the amount of reserves is irrelevant since it is not an implied recognition of the duty to defend. APICO notes that in liability insurance cases the issue is whether there is a possibility of coverage which gives rise to the duty to defend, whereas in property claims the only issue is whether the loss is covered and whether the investigation of the claim was reasonable and in good faith.

Additionally, as noted by APICO, the establishment and amount of reserves is a matter regulated by California law (California Insurance Code and Administrative Code) and, therefore, the amount of a reserve is, at least in part, determined by statute and not by the insurer's estimate of the likelihood of the claimant's success. In any event a prudent insurer would establish reserves sufficient to pay claims based upon many factors, only one of which might be the estimate of the chances of the claimant's success.

Helm urges, analogizing to *Sampson* and following cases, that the amount of the reserve established is probative on the question of whether the insurer acted in good faith in denying coverage and/or failing to offer settlement.

■ First, the court notes that this is not a matter which is controlled by California substantive law, questions of relevancy and admissibility evidence are governed by the Federal Rules of Evidence. Although California substantive law in matters such as privilege may be persuasive, evidentiary matters in diversity actions are controlled by Federal and not California law.

■ Secondly, the court agrees with APICO's distinction between first party and third party (liability) policies with respect to the relevancy of reserve information. In considering whether an insurer acted in bad faith in denying its duty to defend under a "third party" liability policy the

fact that it established a reserve, particularly for litigation costs, is probative on the issue of whether there is a "potential for liability". Thus when an insurer, by its actions, acknowledges the potential for liability and fails to attempt to settle a claim against its insured and/or fails to defend, reserve information is relevant to the issue of good faith. On the other hand, in first party policy of property insurance the issues are whether the claimed loss is covered and whether the insurer acted in good faith in investigating the loss and in denying coverage, the question of "potential liability" is not relevant because it does not trigger any duty under the first party policy. In other words, the policy either provides coverage for the loss or does not, the insurer's good faith is determined by the manner and depth of its investigation and the determination of whether there was a good faith factual and/or legal question as to whether the loss was covered. Potential liability or the insured estimation as to its potential liability is marginally relevant at best. Helm points to no case involving a first party claim where reserve information is discoverable or admissible, nor does it provide a cogent argument why such information would be admissible or probative at trial.

Accordingly, Defendant and Counter–Claimant's motion to compel is DENIED.